STATE OF MISSOURI at the Relation of J. E. TAYLOR, Attorney General, Relator, v. SAM C. BLAIR, Judge of the 14th Judicial Circuit, Respondent, No. 42495—243 S. W. (2d) 324.

Court en Banc, November 12, 1951.

*J. E. Taylor,* Attorney General, and *Gordon P. Weir,* Assistant Attorney General, for relator.

*Edward E. Elder* pro se.

ELLISON, C. J.—The Attorney General brings this certiorari proceeding in this court to review a judgment of the circuit court of Cole County in a habeas corpus proceeding entitled "Edward Emmert Elder, petitioner v. Ralph N. Eidson, Warden of the Missouri State Penitentiary, respondent." The case involves the legal duration of Elder's imprisonment as a convict. He was confined in the penitentiary under two separate judgments and sentences of three years each on pleas of guilty to two several criminal charges [burglary 2nd

degree] the convictions being separately adjudged on the same day, April 5, 1946, by Divisions 10 and 12 of the St. Louis circuit court. The question at issue is whether one of these judgments contained a controlling provision that the two judgments should run concurrently, or whether that provision was later illegally inserted.

 The record brought here contains copies of the judgments and sentences in both cases, marked respectively Exhibits A, B and C, and severally attested by the circuit clerk as authentic on the date of their rendition, April 5, 1946. Exhibits A and B both purport to be copies of the judgment and sentence in the case in Division 12. Of these, Exhibit A recites the three year sentence therein shall run *consecutively* with the three year sentence in Division 10. On the other hand Exhibit B provides that the same three year sentence in Division 12 shall run *concurrently* with the one in Division 10. And Exhibit C, covering the three year sentence in Division 10 recites that it shall run "until the judgment and sentence of the court herein be complied with, or until the said defendant shall be otherwise discharged by due course of law."

On these facts the convict's petition for habeas corpus, filed pro se, alleged he was being illegally detained by the Warden by virtue of "a secondary process of judgment * * * which purports to void the original judgment and sentence of the court." What he meant by that allegation was this—as explained in his habeas corpus petition and manuscript brief here. He asserts that the judgment Exhibit A, requiring the three year sentence in Division 12 to run *consecutively* with the three year sentence in Division 10, was not rendered until nearly two years after the rendition of the judgment, Exhibit B, which latter required the two judgments to run *concurrently*. And he therefore maintains the judgment Exhibit A cannot be treated as a contemporaneous correction by the court of the judgment Exhibit B, but is a later "secondary process" of judgment, which is illegal and void under decisions cited.[1]

. In factual substantiation of the foregoing the convict showed that the copy of the judgment Exhibit A making the two sentences run consecutively, was not received by the Warden until February 2, 1948, as shown by the stamp of his office, though the judgment purported to have been rendered on April 5, 1946. And there was an additional showing that a letter from an assistant Circuit Attorney in St. Louis to the acting Warden concerning these cases, marked "Received Feb. 5, 1948," contained the following: "It has been discovered that through an error the commitment papers showed the above two sentences to have been concurrent instead of consecutive,

[1]Ex Parte Cornwall, 223 Mo. 259, 272, 175 (2, 3), 122 SW. 666, 669-70 (2,3); State v. Riley, 228 Mo. 431, 433(2), 128 SW. 731-2(1); Ex Parte Thornberry, 300 Mo. 661, 666(3), 254 SW. 1087, 1090(8); State ex rel. Browning v. Kelly, 309 Mo. 465, 470(2), 274 SW. 731, 732-3(2).

and we were advised in a telephone conversation with you today that you have now received from Mr. Schuler (the clerk of the St. Louis Circuit Court for Criminal Causes) a corrected copy of the orders imposing these sentences.''

Next following this letter in the record here are copies of three judgments, which we understand to be the *corrected* copies of the ''orders'' referred to in the letter. But these copies make no corrections. They are in fact the same as the original judgments marked Exhibits A, B and C, attached to the convict's habeas corpus petition. That is to say, both judgments marked Exhibit A are shown as running *consecutively;* the two marked Exhibit B are shown as running *concurrently;* and the two marked Exhibit C show the judgment in Division 10 running full time. All six of the judgments are certified by the circuit clerk as true copies of their originals, under date April 5, 1946. The only other thing added to any of them is the Warden's stamp impressed on the judgments Exhibit A, showing they were received at his office on February 2, 1948, nearly two years after their rendition.

Upon these facts the trial court ruled in the habeas corpus proceeding that the three year sentence in the judgment Exhibit B was controlling, that being the one running concurrently with the three year sentence in the judgment in Division 10. We think that conclusion was correct. The adoption of the contrary view—that the sentences ran consecutively—would have involved recognition of the judgment Exhibit A, which was not received by the Warden until nearly two years after the judgment Exhibit B had been put in effect.

It seems to us the ''correction'' of the judgment Exhibit B nearly two years after it was rendered, by the substitution of the judgment Exhibit A, making the sentence run consecutively instead of concurrently with the sentence in Division 12, was much more than a mere correction. It was a change in the judgment itself in violation of the decisions cited supra.[1] The assistant Circuit Attorney's letter to the Acting Warden dated February 5, 1948, said the error was in the *commitment* papers. But the judgment Exhibit B, as introduced in evidence showed that it still recited the judgment itself was to run concurrently.

█ █ The next question is whether the convict had already served the two concurrent three year sentences when his habeas corpus case was heard in the circuit court on or about June 7, 1950. The facts developed there were that he was delivered to the penitentiary on April 9, 1946. On August 5, 1947 he was paroled from the penitentiary after having served about 16 months of the two concurrent three year sentences. Approximately five months later while out on parole he was arrested in St. Louis on charges of burglary and larceny, and again convicted and sentenced to the penitentiary, and his parole was revoked.

He was returned to the penitentiary on October 21, 1948, and a little over two months later, on December 29, 1948, was declared insane and removed to State Hospital No. 1 at Fulton by order of the Governor. This had the effect of suspending his prison sentences, but did not relieve him of serving the remainder thereof after the suspension had expired. Sec. 549.040, R. S. 1949, Sec. 4191 Mo. R. S. A. At that time he had served 18 months and 8 days of the two concurrent three year sentences. He was confined in the Asylum at Fulton for 11 months and 17 days until December 16, 1949, when he was found to be restored to reason and ordered returned to the penitentiary.

The convict in his written suggestions here stresses the fact that he had served 18 months and 8 days of the two concurrent three year sentences when he was sent to Fulton, and says that was more than two-thirds of three years. Apparently he relies on Sec. 549.050, R. S. 1949, Sec. 9353, Mo. R. S. A. which provides that whenever a convict in the penitentiary having served *two-thirds* of the sentence of the court convicting him, and having become insane and sent to a State Hospital, shall have recovered his sanity, and that fact is certified to the Governor by the Superintendent of the Hospital in which he has been confined, it shall be the duty of the Governor to grant a complete discharge from that sentence.

But even so, that statute will not relieve the convict here. For the concurrent sentences imposed by the court convicting him were three years or 36 months, and two-thirds of that would be 24 months whereas he had served only 18 months and 8 days. Apparently he also relies on Sec. 217.370, R. S. 1949, Sec. 9086, Mo. R. S. A., which provides that a convict who shall have served three-fourths of his sentence without infraction of the rules of the penitentiary or intermediate reformatory shall be discharged in the same manner as if he had served full time. And it is true that three-fourths of 36 months would be 27 months, and two-thirds of that would be 18 months, which the convict here has served. But Sec. 549.050, supra, does not permit penitentiary sentences to be scaled down in that manner. It provides the fractional two-thirds shall be figured on "the sentence of the court convicting him."

For this reason we hold the convict is not entitled to discharge, and that the Cole county circuit court ruled correctly in holding his petition therefor was premature. All concur.